THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EASYWORKFORCE SOFTWARE, LLC )<br>and MARIA TAPIA-RENDON, )<br>individually and on behalf of all others )<br>similarly situated, )<br>)<br>Defendants. ) | Case No. |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), by its undersigned attorneys, brings this Complaint for Declaratory Judgment against Defendants, EASYWORKFORCE SOFTWARE, LLC ("EasyWorkforce"), and MARIA TAPIA-RENDON, individually and on behalf of all others similarly situated, and alleges and states as follows:

**STATEMENT OF THE CASE**

1. Scottsdale brings this insurance coverage action to obtain a judicial declaration that it does not have the duty to defend or indemnify EasyWorkforce in connection with a lawsuit brought pursuant to Illinois' Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), and pending in the United States District Court for the Northern District of Illinois, encaptioned *Tapia-Rendon, v. Employer Solutions Staffing Group II, LLC et al.,* Case No. 1:21-cv-3400 ("Underlying Lawsuit").

**THE PARTIES**

2. Plaintiff, Scottsdale, is a corporation organized under the laws of Ohio with its principal place of business in Scottsdale, Arizona.

3. Defendant, EasyWorkforce is a limited liability company organized under the laws of Delaware with its principal place of business located in Miramar, Florida. EasyWorkforce's sole

member, EasyWorkforce Software Corp., is a corporation organized under the laws of Delaware with its principal place of business in Miramar, Florida.

4. Tapia-Rendon is a citizen of the State of Illinois. She is named a potentially interested party by virtue of her status as the representative class plaintiff in the Underlying Lawsuit.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all parties, pursuant to 28 U.S.C. § 1332(a), since the amount in controversy exceeds $75,000, exclusive of interests and costs, and the parties are citizens of different states.

6. Venue is appropriate under 28 U.S.C. § 1391(b)(1), as the parties conduct business in this district, Tapia-Rendon resides in this district, this action involves a coverage dispute with respect to the Underlying Lawsuit pending in this district, and the coverage dispute arises from events that occurred in this district.

7. An actual justiciable controversy exists between Scottsdale, on the one hand, and EasyWorkforce and Tapia-Rendon, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

## POLICY

8. Scottsdale issued to "Sekure ID Corp DBA Easy Clocking," a commercial general liability insurance policy, No. CPS2389286, effective January 6, 2016 to January 6, 2017 ("Policy"). The Policy describes the business of "Sekure ID Corp DBA Easy Clocking" as "Easy Clocking Sales Office." A true and correct copy of the Policy is attached hereto as **Exhibit A**.

9. The Policy contains the following Insuring Agreement with respect to "bodily injury" liability coverage (Coverage A):

>    **1.   Insuring Agreement**
>
>    **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" … to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" … to which this insurance does not apply. …

10. The Policy contains the following Insuring Agreement with respect to "personal and advertising injury" (Coverage B):

>    **1.   Insuring Agreement**
>
>    **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. …

11. The Policy includes the following relevant definitions:

>    **3.**   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
>    \* \* \*
>
>    **13.**   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
>    **14.**   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses: …
>
>    **e.**   Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
>    \* \* \*

12. The Policy provides as follows with respect to Section II – Who Is An Insured:

>    **1.**   If you are designated in the Declarations as: …

    **d.**    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

* * *

**3.**    Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    a.    Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    b.    Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    c.    Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

* * *

13.    The Policy includes the following exclusion relevant to "bodily injury" coverage ("Coverage A - Violation of Law Exclusion"):

    **2.**    **Exclusions**

    This insurance does not apply to: …

    **q.**    **Recording And Distribution Of Material Or Information In Violation Of Law**

    "Bodily injury" … arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    **(1)**    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

 **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
 **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or
 **(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

* * *

14. The Policy includes the following exclusion relevant to "personal and advertising injury" coverage ("Coverage B - Violation of Law Exclusion"):

> **2.** **Exclusions**
>
> This insurance does not apply to: …
>
> **a.** **Knowing Violation Of Rights Of Another**
>
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".
>
> * * *
>
> **p.** **Recording And Distribution Of Material Or Information In Violation Of Law**
>
> "Personal and advertising injury" … arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
> **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
> **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

> **(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

* * *

15. The Policy is endorsed to include the Designated Professional Services Exclusion Endorsement (CG 21 16 04 13), which states:

> With respect to [any and all professional exposures], the following is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:
>
> This insurance does not apply to "bodily injury" … or "personal and advertising injury" due to the rendering of or failure to render any professional service.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" …, or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

16. The Policy is endorsed to include the Limitation of Coverage to Designated Premises Endorsement (GLS-175s (1-15)) ("Designated Premises Exclusion"). The Schedule for the Designated Premises Endorsement lists only 3141 Commerce Parkway, Miramar, FL 33025. The Designated Premises Exclusion provides, in pertinent part:

> This insurance does not apply to:
>
> **1.** "Bodily injury" … or "personal and advertising injury" occurring on any premises other than the designated premises shown in the Schedule above; or
>
> **2.** "Bodily injury" … or "personal and advertising injury" that occurs away from the designated premises caused by supervision, hiring, training, organizing, or any other activities conducted on or from the designated premises shown in the Schedule above.

\* \* \*

17. The Policy also is endorsed to include the Employment-Related Practices Exclusion (CG 21 47 12 07) ("ERP Exclusion"), which applies to: "bodily injury" and "personal and advertising injury" to "a person arising out of any … [e]mployment related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person." Notably, that Exclusion applies "[w]hether the insured may be liable as an employer or in any other capacity."

18. The Policy also includes the Exclusion-Access or Disclosure of Confidential or Personal Information and Data-Related Liability – With Limited Bodily Injury Exception Endorsement (CG 21 06 05 14) ("Access or Disclosure Exclusion"), which applies to Coverage A and Coverage B. It specifically provides that it excludes "damages arising out of … [a]ny access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information …."

19. The Policy also includes a Punitive or Exemplary Damage Exclusion (UTS-74g (8-95)), which states:

> This policy does not apply to a claim of or indemnification for punitive or exemplary damages.
>
> Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.
>
> If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action. However, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

\* \* \*

20. As amended by the Amendment to Other Insurance Condition Endorsement (GLS-152s (4-14)), the Policy provides:

**4. Other Insurance**

**a. Primary Insurance**

This insurance is primary except when **b.** below applies.

**b. Excess Insurance**

**(1)** This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

* * *

**(e)** That is valid and collectible insurance available to you under any other policy.

**(2)** When this insurance is excess, we will have no duty under **Coverages A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

* * *

**UNDERLYING COMPLAINT**

21. On June, 24, 2021, the Tapia-Rendon initiated the Underlying Lawsuit with the filing of a "Class Action Complaint and Demand for Jury Trial" ("Underlying Complaint"). The Underlying Complaint generally alleges violations of BIPA against Employer Solutions Staffing Group II, LLC ("ESSG"), United Tape & Finishing Co., Inc. ("United Tape"), and EasyWorkforce (collectively, the "BIPA Defendants") during the period of June 24, 2016 to the present. A true and correct copy of the Underlying Complaint is attached hereto and incorporated herein as **Exhibit B**.

22. The Underlying Complaint alleges that EasyWorkforce is in the business of developing and selling biometric timeclocks and timekeeping software and websites for employers to manage and collect employee data, including fingerprints.

23. The Underlying Complaint alleges that United Tape and ESSG used one of EasyWorkforce's biometric timeclocks and software to track employee hours at United Tape's Woodridge, Illinois, facility, where Tapia-Rendon worked and was required to use the timeclock, which scanned and collected the employees' fingerprints.

24. The Underlying Complaint alleges that EasyWorkforce did not explain the functionality of its biometric timeclocks to the workers using them, did not tell workers how it used data collected through them, did not tell workers how long it kept data collected through its biometric timeclocks, and that workers, including Tapia-Rendon, did not consent to EasyWorkforce's "capture and collection of their fingerprints or the identifying data derived from them."

25. The Underlying Complaint generally alleges that the "[BIPA Defendants'] misappropriation and misuse of [Tapia-Rendon's] biometrics – and their accompanying failure to publicly explain how and when they destroy biometrics in their possession – have caused [Tapia-Rendon] mental anguish and related bodily injury," in that Tapia-Rendon "worries and feels mental anguish about what [BIPA] Defendants will do with her biometrics, what will happen to her biometrics

if any [BIPA] Defendants go bankrupt, whether [BIPA] Defendants will ever permanently destroy her biometrics, and whether and to whom each [BIPA] Defendant shares her biometrics." The Underlying Complaint also alleges that Tapia-Rendon's claims "have the same factual and legal bases as the proposed Class members', and Defendants' conduct has resulted in identical injuries to Plaintiff and the other members of the Classes."

26. The Underlying Complaint seeks to certify three classes of individuals, including, in pertinent part, as follows:

> **EasyWorkforce Class**: All individuals who used any EasyWorkforce biometric timeclock in the State of Illinois on or after June 24, 2016.

27. The Underlying Complaint asserts nine counts, three of which are directed at EasyWorkforce.

28. Count 7 (titled, "Violation of 740 ILCS 14/15 ("BIPA") Against EasyWorkforce, by [Tapia-Rendon] and the EasyWorkforce Class") alleges that EasyWorkforce failed to comply with BIPA in numerous respects, including that prior to "capturing, collecting, receiving, and obtaining [Tapia-Rendon's] and the EasyWorkforce Class's biometric identifiers and information," EasyWorkforce failed to: inform Tapia-Rendon and the EasyWorkforce Class in writing that their biometrics were being collected, stored, and used; advise of the specific purpose for which their biometrics were being collected, stored, and used; advise of the length of time that their biometrics would be maintained; obtain a written release authorizing such collection; and provide a publicly available retention schedule detailing the length of time it would maintain Tapia-Rendon's and the EasyWorkforce Class's biometrics and guidelines for permanently destroying the same.

29. Count 8 (titled, "Negligence Against EasyWorkforce, by [Tapia-Rendon] and the EasyWorkforce Class") alleges that EasyWorkforce breached its duty to exercise reasonable care in the capture, collection, use, and maintenance of biometrics, in compliance with BIPA, by failing to implement reasonable procedural safeguards for the capture, collection, use, and maintenance of

biometric identifiers and biometric information; inform in writing that biometrics were being captured, collected, stored, and used; inform in writing of the specific purpose for which their biometrics were being collected, stored, and used; inform of the length of time that their biometrics would be maintained; obtain a written release authorizing collection of their biometrics; and provide a publicly available retention schedule and guidelines for permanently destroying biometrics.

30. Count 8 alleges that EasyWorkforce's breach of its duty of care "has directly caused and continues to cause [Tapia-Rendon] mental anguish and injury," and that " [Tapia-Rendon] worries and feels mental anguish about what EasyWorkforce will do with her biometrics, what will happen to her biometrics if EasyWorkforce goes bankrupt, whether EasyWorkforce will ever permanently destroy her biometrics, and whether and to whom EasyWorkforce shares her biometrics."

31. Count 9 (titled, "Intrusion Upon Seclusion Against EasyWorkforce, by [Tapia-Rendon] and the EasyWorkforce Class") alleges that by intentionally using biometric-scanning devices to capture and collect Tapia-Rendon's and the EasyWorkforce Class's fingerprints and then extracting from those fingerprints uniquely identifying reference templates, EasyWorkforce intentionally and unlawfully intruded upon Tapia-Rendon's and the EasyWorkforce Class's private affairs and concerns, which they had a reasonable expectation would not be captured, collected, stored, or used without their informed consent, and a reasonable person would find it highly offensive and objectionable that a third party would intrude upon their seclusion by capturing and maintaining their biometrics without informed consent.

32. Count 9 includes an allegation, like Count 8, concerning mental anguish suffered by Tapia-Rendon.

33. The Complaint seeks to certify the above-described class and recover injunctive and equitable relief; statutory damages of $5,000 per willful and/or reckless violation of BIPA; statutory

damages of $1,000 per negligent violation; attorneys' fees, costs, and litigation expenses, pursuant to BIPA; and pre- and post-judgment interest.

## TENDER OF DEFENSE AND INVESTIGATION

34. On or about November 28, 2022, EasyWorkforce notified Scottsdale of the Underlying Lawsuit and sought coverage under the Policy.

35. Scottsdale immediately initiated an investigation, which revealed that United Tape began using in January 2021 a biometric timeclock it had purchased from EasyWorkforce.

36. Scottsdale has reserved all rights under the Policy to disclaim coverage in connection with the Underlying Lawsuit pending the completion of its investigation.

## COUNT I – NO DUTY TO DEFEND

37. Scottsdale incorporates by reference paragraphs 1-36 above as if fully stated herein.

38. The Policy requires, as a prerequisite to coverage, that any person or organization seeking coverage qualify as an insured pursuant to Section II – Who Is An Insured.

39. Pursuant to Section II – Who Is An Insured(1)(d), the Policy provides that the Named Insured "Sekure ID Corp DBA Easy Clocking" is an insured. The Policy further provides that any "organization [Sekure ID Corp DBA Easy Clocking] newly acquire[s] or form[s], other than a partnership, joint venture or limited liability company, and over which [Sekure ID Corp DBA Easy Clocking] maintain[s] ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization." It also provides that "[n]o person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."

40. The Policy identifies the Named Insured as "Sekure ID Corp DBA Easy Clocking." But, the Underlying Complaint in the Underlying Lawsuit is directed against EasyWorkforce.

41. As EasyWorkforce is neither the Named Insured, nor does it qualify as an insured under Section II – Who Is An Insured of the Policy, Scottsdale could have no duty to defend EasyWorkforce under the Policy in connection with the Underlying Lawsuit.

42. Coverage A of the Policy applies to "bodily injury" caused by an "occurrence." "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." "Occurrence" means an "accident." However, the Underlying Lawsuit does not allege "bodily injury" as that term is used in the Policy. Further, to the extent EasyWorkforce recklessly or willfully violated BIPA, no "bodily injury" could have been caused accidentally. Rather, the injuries would be the natural and ordinary consequence of EasyWorkforce's business operations. Hence, Scottsdale has no duty to defend EasyWorkforce in connection with the Underlying Lawsuit.

43. Coverage B of the Policy applies to "personal and advertising injury," which means, in pertinent part, "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: … [o]ral or written publication, in any manner, of material that violates a person's right of privacy." However, the Underlying Lawsuit does not allege "personal advertising injury," as that term is used in the Policy. In particular, the Underlying Lawsuit does not allege the "publication" of material that violates a putative class member's right of privacy. Further, to the extent EasyWorkforce recklessly or willfully violated BIPA, any "personal and advertising injury" would necessarily have been committed with the knowledge that the subject misconduct would violate the putative class members' rights and would inflict the "personal and advertising injury." Hence, Scottsdale has no duty to defend EasyWorkforce in connection with the Underlying Lawsuit.
Hence, Scottsdale has no duty to defend EasyWorkforce in connection with the Underlying Lawsuit.

44. Even if all other prerequisites under Coverage A or Coverage B were met, which Scottsdale denies, the Violation of Law Exclusion applies to "bodily injury" and "personal and

advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate "[a]ny federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." As BIPA qualifies as a state statute that "addresses, prohibits, or limits the … disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information," the Violation of Law Exclusion negates a duty to defend EasyWorkforce against the Underlying Lawsuit.

45. Even if all other prerequisites under Coverage A or Coverage B were met, which Scottsdale denies, the Policy's Access or Disclosure Exclusion, which applies to alleged damages arising out of any access to or disclosure of any person's confidential or personal information, including "any other type of nonpublic information," precludes a duty to defend the Underlying Lawsuit.

46. Even if all other prerequisites under Coverage A or Coverage B were met, which Scottsdale denies, the Policy's Designated Premises Exclusion applies to "bodily injury" and "personal and advertising injury" occurring away from 3141 Commerce Parkway, Miramar, FL 33025, including injury caused by supervision, hiring, training, organizing, or any other activities conducted on or from the designated premises." The Underlying Lawsuit alleges harm that occurred in Illinois and away from Florida, where the Policy was issued and delivered, and thus, the Designated Premises Exclusion precludes any duty to defend EasyWorkforce under the Policy for the Underlying Lawsuit.

47. Even if all other prerequisites under Coverage A or Coverage B were met, which Scottsdale denies, the Policy's ERP Exclusion applies to "bodily injury" and "personal and advertising injury" to "a person arising out of any … [e]mployment related practices, policies, acts or omissions," and further applies "[w]hether the insured may be liable as an employer or in any other capacity." As

the claims against EasyWorkforce concern injury resulting from employees' clock-in and -out procedures, which are fundamental to the employer-employee relationship and concern practices and policies relating to the putative class' employment, the ERP Exclusion precludes any duty to defend EasyWorkforce under the Policy for the Underlying Lawsuit.

48. Even if all other prerequisites under Coverage A or Coverage B were met, which Scottsdale denies, the Policy's Designated Professional Services Exclusion applies to "bodily injury" and "personal and advertising injury" "due to the rendering of or failure to render any professional service." EasyWorkforce's liability necessarily arises out of the management and operation of its biometric timeclocks for others, which constitutes its "professional services." Thus, the Designated Professional Services Exclusion precludes any duty to defend EasyWorkforce under the Policy for the Underlying Lawsuit.

49. Even if Scottsdale were found to have a duty to defend EasyWorkforce, coverage under the Policy would be excess over all other insurance available to EasyWorkforce in connection with the Underlying Lawsuit. That includes, but is not limited to, coverage available between January 6, 2017 to March 14, 2021.

### COUNT II – NO DUTY TO INDEMNIFY

50. Scottsdale incorporates by reference paragraphs 1-49 above as if fully stated herein.

51. Given that EasyWorkforce cannot be liable under any theory in the Underlying Lawsuit that could potentially fall within Coverage A or Coverage B of the Policy, and because Scottsdale has no duty to defend EasyWorkforce in the Underlying Lawsuit, Scottsdale necessarily has no duty to indemnify EasyWorkforce against any adverse judgment or settlement in the Underlying Lawsuit.

52. Scottsdale further could have no duty to indemnify EasyWorkforce in the Underlying Lawsuit based on the Policy's exclusion of punitive damages, which precludes any duty to indemnify

EasyWorkforce against an award of damages under BIPA for willful or reckless violations, as the $5,000 per violation award available under BIPA is inherently punitive.

WHEREFORE, Plaintiff, SCOTTSDALE INSURANCE COMPANY, respectfully requests this Court declare and adjudge the controversy as follows:

    A.    Scottsdale has no duty to defend EasyWorkforce in the Underlying Lawsuit;

    B.    Scottsdale has no duty to indemnify EasyWorkforce in the Underlying Lawsuit;

    C.    Grant any other relief that this Court deems just and equitable under the circumstances, including the award of costs.

DATE: February 17, 2023　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　By: /s/ Jonathan L. Schwartz_____
　　　　　　　　　　　　　　　　　　　　　Attorney for Scottsdale Insurance Company

Jonathan L. Schwartz
Glenn A. Klinger
FREEMAN MATHIS & GARY LLP
111 W Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (773) 389-6440
jonathan.schwartz@fmglaw.com
glenn.klinger@fmglaw.com